Here ye, here ye, here ye. This Honorable Court of the 2nd Judicial District is now back in session pursuant to adjournment. And I would now like to introduce the inauthor's item. Thank you. Please be seated. This case 214-0192, People of the State of Illinois v. J. M. Trout Attorney Dale J. Clark for the defense, Attorney Barry W. Jacobs for the affidavit. Good morning, counsel. Good morning. Mr. Clark. You may. Thank you. Thank you for your time this morning. I realize this is a rare opportunity, and I appreciate that from the court. I'm Dale J. Clark, and on behalf of the defendant, Mr. J. Trout, I'm requesting this Honorable Panel overturn the conviction of Mr. Trout for the offense in the within matter. While we have seven or so items in our brief, judges, that we have brought before your honors for your review, I think it can be condensed into probably four main areas of argument. First, we believe the defendant's conduct was reasonable parental discipline, and the state failed to prove beyond a reasonable doubt that it was not so. Second, we believe the trial court erred in admitting Dr. Duarte's speculative opinion as to the cause of the complainant's perforated eardrum. It should not have been permitted by the trial court, as Dr. Duarte was not qualified by the court as an expert. And more importantly, his opinion was not proffered or stated to a reasonable degree of medical certainty. Was that a specific objection made at the time? I believe it was, Your Honor. In fact, we, as the defense, attempted to elicit that opinion to a reasonable degree of medical certainty to determine if the doctor would make that opinion to a reasonable degree of medical certainty. It was objected to by the state, and the trial court granted the state's objection, and we were not permitted to inquire. Assuming that there was some error, how would that have affected the outcome of the trial? Because the trial court found that your client inflicted harm, but not great bodily harm. I think it impacts the outcome of the trial because of the way and the nature in which the state specifically chose to allege the charge against Mr. Traub. The state did not allege it against Mr. Traub, generic bodily harm, any type of physical harm in any generic sense. By alleging great bodily harm, they've alleged harm that was caused by slapping and punching. Yes, but when you read the charging document, they went on to state more specifically that it was a perforated eardrum in which they were arresting their case. The charging document itself, as drafted by the state, says that the harm that they are alleging occurred is a perforated eardrum. That's why it's important in this case, Your Honor. Again, the judge found that your client caused harm, but not great bodily harm. Correct, Judge. Is it the evidence sufficient that the child, WT, had a perforated eardrum after he had been slapped by your client and the statements that he made to his mother, to the police, the video, that's not sufficient? Judge, I don't believe it is in this particular case. I do not. When you look at the statements- Aren't you asking us to re-weigh the evidence? Judge, I'm asking you to be the final arbiter and determine under the totality of the circumstances- Regarding the findings of fact and the decision by the trial court, what's the standard of review? Judge, the standard of review is stated in our final argument in this case, Judge, is that you are, in fact, under the totality of the circumstances, supposed to look at this case, as with any case- You're familiar with the Collins standard, right? Yes, Judge. That's the standard of review. And even in a light most favorable to the state, Judge, even not substituting your judgment for the judgment of the trier of fact, I don't believe the conviction judge in this case can and should stand for the reasons stated in our briefing and for the reasons which I'll outline for you. First of all, Judge, the actual statements made by WT immediately after this alleged occurrence were not significant, did not cause him harm. What did he do? What occurred on the day in question, according to the undisputed testimony that's in the record? WT was asked to clean his room because he was getting ready to go to visitation with his mother. He did not do so for a period of 45 minutes to an hour. The father, Mr. Trout, checked on the status of that room in order to prepare his son for the visitation with his mother. He discovered that it did not occur, that, in fact, the room was not clean. What did WT do, according to his own testimony? He mouthed off to him. He smartened off to him. As a parent, a parent has a right, then, at that point in time, to see that his direction was followed. What occurred? In the words of WT, what occurred? The conduct of the part of Mr. Trout from that point forward, in the words of WT, consisted of an open palm, an open slap. Either one. Is he asking whether it was done in anger or as discipline? Judge, I don't think that the determination of whether it was done in anger, with all due respect, ends the inquiry. I would submit to Your Honor that in the court of reasonableness and the world of reasonableness, with respect to parents, that many, if not most, incidents of discipline between a parent and a child, particularly if the child reaches near teen years, can often be where the parent is, in fact, and it's not unreasonable to assume or presume that the parent is, in fact, perhaps momentarily angry at that moment in time. That doesn't end the court's inquiry. But the trial court made a finding of credibility with respect to T.T., the sister's, the sibling's testimony, and that was consistent with the initial statement that WT gave, which was different than an open hand. I mean, he recanted somewhat, but his initial statement to the authorities was different and certainly was consistent with T.T.'s testimony, that the fear that he exhibited and the fact that this wasn't an open hand. Judge, I would disagree in the sense that some of the statements that T.T. testified to that you may be referring to, perhaps a punch into the hip or the stomach area, that was not corroborated by anyone. WT only mentioned later, at some point to some authority later, that he slapped me on my butt in addition to slapping me on my hand saying, get your room clean. Mike, here's the 11510 statements. You're familiar with the purpose of 11510. I am, Your Honor. And what's the purpose? Essentially, Judge, it's a corroborative outcry scenario in order for other witnesses to confirm or say that some event occurred as based on statements made by a complaining witness to that other witness. To produce reliable corroborating evidence of a child's outcry statements. Yes, Your Honor. That's the purpose. And the court found that the outcry statements and the recorded interview were more reliable than WT's in-court testimony, especially in light of T.T.'s testimony, correct? Judge, I believe that was the court's finding. He found that WT's testimony was not credible because he had been told that your client was facing a sentence of 6 to 30 years in the penitentiary, correct? Judge, I believe that was the court's finding. But I would ask you to take a closer look at the 11510 statements. First of all, Judge, for the record, we objected to their introduction both at the 11510 hearing and at trial. I'll leave that to Your Honor's consideration. But then I would also ask you to look at those 11510 statements themselves. We asked the court with specificity to describe with specificity at the 11510 hearing what statements were going to be admitted. The court simply said the statements made by WT to this particular individual did not identify the specific statements that were going to necessarily be admitted. And the state didn't proffer specific statements that they intended to introduce for that purpose. It was never clarified or proffered at trial in terms of specific other than at the trial testimony. And when you look at the actual individual statements that were alleged to have been made by WT to the individuals in the 11510 hearing, WT was consistent that it was an open hand. He was consistent that it was to the side of his head. He was consistent, Your Honor, that it was consistent of one or at most two slaps. When you see the 11510 statements and you also see the trial testimony that was meant and intended, I assume by the state, to corroborate those 11510 statements at trial, you look at the investigation conducted by the individuals who apparently received these outright statements. There was no obvious sign of trauma. There was no harm. He appeared to be normal. Even in the follow-up visits less than a week later, there was no obvious sign of trauma or emotional distress. They could not find any signs of trauma. They couldn't find any signs of being punched or hit in any other location. There were signs of a perforated eardrum and redness to his cheek area. The same redness, Judge, if you recall in the trial testimony, was noted by the judge at trial. He has that condition of eczema. It was confirmed at trial. And I don't know if you've had an opportunity to review the photographs that were also submitted. The officer never supplemented a report to say that that didn't accurately represent him. And when you look at those photographs taken that evening, there's no signs of trauma. The trial court found T.T.'s testimony that your client was punching her brother in his stomach. I think she said stomach. And also the 11510 statement is to be credible. Judge, I respectfully say that I understand your argument, but we're not the trial court. You are, Judge. But you are, as the appellate court, the final arbiter of whether or not there is reasonable doubt, as decided in the case law in this particular case under the totality of the circumstances. And I would submit to you under the totality of the circumstances, when you actually go beyond the testimony and you go and actually look at the physical statement. Considering all the evidence in light and most favorable to the state, was there enough evidence to sustain a conviction? In my opinion, absolutely not, Your Honor. Absolutely not. With respect to Dr. Duarte's admitting that opinion, this is not a civil case. This was a criminal case. That's correct. Certainly, wasn't the trial court within its bounds to admit that testimony without qualifying him as an expert, since he was the treating physician who saw him very shortly after this occurred? And certainly, wasn't that enough to allow the trial court to weigh that testimony? I would say no in this particular case, Judge, on two grounds. First, I don't think the nature of the proceeding changes the evidentiary foundational requirement, as you're suggesting. I still think that an expert opinion, not a lay opinion, must be to a reasonable degree of medical certainty. That was not proffered in this case. I also would point to you towards the physical impossibility of the conclusion of Dr. Duarte. Dr. Duarte, because he lacked the special certification of Dr. DiBartolo, was not able to draw the proper medical conclusion. He was an emergency room physician. He was, Your Honor. And he had said, I don't recall the exact number, but he had seen thousands of patients. Yes, Judge. And he had seen perforated eardrums in the past. Yes, Judge. But when you look at the physical. And he rendered his opinion based upon that. He did render his opinion. That opinion, Judge, again, is a physical impossibility. I'm not here to speculate as to how or why, other than to state that relying on the exact same physical observations contained by Dr. Duarte or testified to by Dr. Duarte, the physician who is specialized in oval laryngology, who does this as part of his ordinary normal practice, performed thousands not just of examinations but surgeries, says his description of the wedge-shaped defect and the cobblestone appearance, physically, the injury could not have occurred as Dr. Duarte surmised. And the trial court found that that opinion was biased. Without any real, in my opinion, Judge, comment, I'd like to ask for the medical sufficiency of Dr. Duarte's testimony. Now, if we're talking about the interpretation, Your Honor, of a particular factor or something of that art opinion in that nature, I certainly understand the court's comments in that regard. But the court didn't point to a specific medical reason for disputing Dr. Duarte's medical opinion, which was to a reasonable degree of medical certainty. He is certified in the area of oval laryngology. Oddly, though, isn't that what the trial court is supposed to do, is listen to purported experts and decide who he or the trial court, who he or she believes to be the more credible witness? Judge, I believe that's the function of the trial court. I believe, however, in this court she simply was in or committed a reversible error by doing so in this particular instance. Again, because of the physical impossibility, I pointed, Your Honor, to a number of cases in the Kosovar brief in which the appellate court, standing instead and reviewing the evidence, essentially said, I realize those are all factually different cases. But the crux of those cases is that physically the testimony that occurred, it could not have occurred, the client was alleged, could not have occurred in the way that the state had alleged. It could not have happened. Well, wasn't it odd that just coincidentally the child, according, based on the record, the first experience of pain in that ear is following the conduct of your client that day? Judge, I would dispute that that's what the record solely states. W.T. testified. But, Your Honor, his testimony was discredited by the trial court, the other evidence besides his testimony. He didn't complain of pain in the ear until after he was slapped by your client. Judge, he was not specifically asked if his ear hurt by Officer Coletti prior to this incident in question. He was simply asked if his ear hurt that evening. He was not specifically asked by Officer Coletti. Was he asked by the defense in cross-examination if he had complained of his ear hurting before? I believe it was, Judge, and he stated that it had been hurting for some days prior, but no one asked him. No one asked him. He didn't complain of pain before that. He said that his ear, I believe, was bothering him. He said that for several days prior, but no one asked him that evening. And that brings me, Judge, to the statements that are on the DVD, which you're referring to. You have to remember that the statement that he made on the DVD was three weeks after this occurrence, after he had been residing solely with his mother, after he had had the visit to the ER doctor. After the ER doctor had already determined an improper medical diagnosis of which he was fully aware, made aware by his mother and others, by the time he asked that DVD interview. So I would respectfully ask the court to consider the basis of that DVD interview, the foundational basis and the statements contained therein, in that light as well. You saw it, speaking of the DVD interview, you saw it. The court considered the entire interview. That trial. Including the description of past corporal punishment to show that your client's actions, that they were not consistent with an angry outburst, but punishment that he had imposed in the past. Judge, to show that it was an age-appropriate punishment, being a 12-year-old and you're a teen, I mean, he certainly is beyond the age of spanking at that time. And clearly the parent who sits and has the responsibility of raising this child and producing correct behavior in this child made a determination that some type of physical contact was going to be necessary. And we submit it was perfectly within the Constitution for that right. But that DVD shows that it was age-appropriate, I believe. And if you review the remainder of the DVD and if the court had done so, the court would see and get a better understanding and appreciation of the context in which it was administered. And what exception, what evidentiary rule applies or exception to the hearsay rule would allow that to be introduced? Judge, I don't believe it's an exception to the hearsay rule as much as it is the completeness doctrine. As the judge clearly interpreted that DVD and admitted that DVD into evidence, I believe she relied on it. As substantive evidence. As substantive evidence, the entire complete statement should have been considered as per the cases that were cited. Doesn't the Supreme Court rule, Illinois Rule of Evidence 405, the comments say specific instances of a person's conduct as proof of a person's character or trait are generally not admissible as proof that that person acted in conformity therewith. I mean, that's essentially what you were asking, to show that his past behavior was in conformity with his behavior that day and the rule seemed to say that that evidence is not admissible. Judge, I respectfully would disagree with you that that's what we were requesting on that occasion and what we're requesting now. The reason for that is simply that under the completeness doctrine, you need to see the entire statement to get us full effect. But we believe and we've outlined in our reply brief as well that the DVD would have shown was not past instances. We wouldn't have asked the court to consider any of those past instances. But you were trying to get it in to show what really happened that day. So show the entire interview, similar to a sexual assault where a child is describing one event, but she then goes and describes a history with the offender. Judge, I would disagree in terms of the recitation of a history. What we were trying to have the court look at, and I believe as the trier of fact, Judge Sutton certainly would have been capable of doing so as she is the trier of fact and she's charged with that responsibility, disregard those irrelevant aspects, disregard prior instances that the rules do not permit her to consider, but do consider the psychological effects, for example, of the discipline on the minor, WT, whether or not he was, as a result of this incident, had any ongoing fear, emotional problems with respect to, here it is three weeks after the event. All of those things would have been shown on the DVD and all of those are factors required by the court and people would be freeing to be considered by the court in determining whether this is appropriate parental discipline. Those are the factors that we wanted the court to consider. Now, yes, there were past instances that may or may not have been relevant or irrelevant. And I certainly trust the court to make that determination as the trier of fact. That's her job and that's the responsibility she was charged with. But that wasn't the purpose of requesting her to see the entire DVD. It was for those other psychological and other emotional factors that the people would be agreeing for. It says the court has to consider in determining whether or not this was appropriate parental discipline. And those other psychological factors we would suggest to the court would show that there weren't any. There was no fear. There was no emotional harm. There was no likelihood of future or more severe harm going forward. The child would say that he wanted to be with his father. He was not afraid of his father. He felt he was being disciplined. What did he do after the incident? He cleaned his room. Could hitting a child with such force that you cause an ear drum to be perforated ever be considered reasonable corporal punishment by a parent? Could it be? Judge, I'm not going to speculate. How about punching a child in the stomach? Could that be reasonable corporal punishment? Judge, I'm not going to speculate because I think without all the other aspects of the force that may or may not have been applied for anything, I think that would be nothing but speculation, Your Honor. Dr. DeBartolo testified to what the force would be required to, on its own, with that force alone, cause a perforated ear drum. It would have left significant bruising, significant evidence of trauma, none of which were observed on WT that evening. You ever see a boxer that's been punched in the side of the face? There's no marks on his body, but he's got a perforated ear drum? Judge, I can't speculate, Judge, as to what I can see in the boxing ear or the other. I don't think that's appropriate. An open hand, as opposed to a fist, which might cause a bruise? Judge, I would redirect Your Honor, I suppose, to the actual evidence in this case. Common sense and experience in life is also relevant for a trial court to consider. Absolutely, Your Honor, and for this court to consider. And you mentioned the common sense and experience in life. Is it so unreasonable for a father to use an open hand on a near-teen son who mouthed out to him? I would submit to you it is not unreasonable. It is not uncommon. Is it unreasonable for a father to have a momentary instant of anger at the time he's administering that discipline? I would submit to you that's not unreasonable. That's not uncommon. The Constitution is here not just to protect perfect parents in a sterile environment with prescribed rules of administration and parenting order in the home. The home is a fluid situation. The home is always in flux. And that does not make a determining factor of what is proper parenting. Proper parenting is a reasonable standard for a reason. The constitutional protection for a parent-child relationship is here for a reason. And it allows for some imperfection as long as it does not exceed the balance of reasonableness. You'll have time on rebuttal, counsel. Thank you. Thank you. Mr. Jacobs? I'm Barron Jacobs on behalf of the people of the state of Illinois. As I believe in this case, may it please the court and counsel. In fact, the defendant in this case is asking this court to reweigh the evidence that was presented to the trial court. The statement submitted to the evidence was more than sufficient for any rational prior effect to find beyond a reasonable doubt. Before you get into an analysis of the evidence, could you address what counsel raised that you are bound by the specific allegations in the complaint of a ruptured eardrum as opposed to any other bodily harm? It's the state's position that that allegation was, in fact, proved. And we don't dispute that the state is required to prove each and every element of the offensive's charge. So the specificity would require the state to prove a perforated eardrum as opposed to any other injury. Is that correct? It's my belief, yes. And it's also the state's position, as I said, that the evidence was sufficient. Any rational prior effect could have found that the defendant caused the specific injury of a perforated tympanic membrane when he slapped his son twice in the face. I'm going to turn first to Dr. Duarte's testimony. And the defendant makes a lot about him not offering his opinion to a reasonable degree of medical certainty. I believe that the court in this case did make a reliability determination of Dr. Duarte's testimony based upon his experience and his specialized knowledge as an emergency room physician. Dr. Duarte testified that he'd seen over 1,000 eardrums, perforated eardrums, and he actually offered some of the causes that he had seen for these eardrums, which included trauma, infection, noise. He didn't investigate all these other causes because he knew in examining the minor WT based upon a triage nurse, based upon his conversations, that this minor had come into the emergency room with a hissing sound in his ear after being struck in the face. So his diagnosis that this was a perforated eardrum, there's no doubt it was a perforated eardrum, and he opined that the cause was trauma based upon the history given, based upon the presence of blood in the ear canal, based upon the absence of any infectious process. And those statements come in as substantive evidence. They do. As to the cause of the injury, correct? Correct. The court also in this case made a reliability determination of the expert offered by the defendant, Dr. Hans De Bartolo. And contrary to the defendant's presentation this morning, the court actually made some findings regarding the reliability, the credibility of Dr. De Bartolo. The state brought out on cross-examination that this doctor had reviewed all the medical records. He had not seen a police report. He based his opinion, which was after he conducted an examination some months later, I believe the examination was done into the next year, perhaps in February. This event occurred in October, and his examination didn't occur. His first examination, I believe, was February 8th, and then he did another examination. But he admitted that he based his opinion upon what he was told by the minor, and who minimized what his father had done. Again, he hadn't seen a police report. He hadn't even reviewed all of Dr. Duarte's findings. He was surprised on cross-examination to learn that Dr. Duarte, in fact,  So the court made this determination and obviously attributed lesser weight to Dr. De Bartolo's testimony. Based upon evidence, the court was required to go behind that expert's opinion and look at the evidence that supported it. And in this case, that's exactly what the court did. Regarding the issue of reasonable parental certainty, the defendant argues that this was a traditional punishment designed to cause the minor to clean his room, and it really wasn't so much punishment. He likens the case to this older DiCaro case, which is the 1974 case, and that cites an 1899 case. In my brief, I talk about that being certainly not dispositive of the issue. DiCaro really speaks to whether or not the discipline was conducted with malice or with wanton recklessness. And the standard we know from the Green case that this court decided is whether or not the discipline was reasonable based upon the factors that were presented to the trial court, it's clear that a rational charge of fact could have found this was not reasonable parental discipline. The defendant admitted that he struck the minor. He admitted that he struck the minor in anger. The minor did exhibit immediately following the striking. T.T. had testified, and as Your Honors noted, the court did find T.T. to be a credible witness. T.T. testified that the minor, W.T., was struck. She observed all this in the basement. She was an 8-year-old girl approximately at that time. She was upset. She ran upstairs. She came back downstairs. The minor, W.T., is cowering, eventually runs out of the house after she goes back upstairs. He's emotional. The father, the defendant in this case, takes them to visitation. Jill Avedi, who is the mother of both minors, testifies that when they arrive, the father is apologizing. The defendant is apologizing to this minor. This is not reasonable parental discipline, and the court made that finding appropriately. What about the telephone call? Can you address the telephone call from Jill Avedi? I think it was Officer Colletti speaking to the defendant. The defendant argues that the foundation was insufficient. It's the state's position that the foundation was established through evidence that was induced at trial. There was testimony from Officer Colletti that she called the number that had been given to her for the defendant by Jill Avedi. What about the contents of that phone call? Can contents of a phone call serve as a foundation as well? They can. I was actually going to look for the citation of the case. Based upon what was discussed, it's clear that this was the defendant speaking about his son, the minor, W.T., and his daughter, T.T., to the extent that they spoke. So it's the state's position that the foundation elements were met based upon the evidence that was induced during the trial. A helpful hint to both parties, when you're relying upon a rule of evidence, cite the rule as well as the case law because that's the only way we can build a substantial body of law regarding the new. They're not new anymore. They've been around since 2010, the rules of evidence. Yes, thank you. I would take issue with the defendant's suggestion that there was no showing that the injury to W.T.'s ear occurred after this slap. The defendant said it's because no one asked W.T. W.T. did testify that his ear had been hurting for a couple of weeks. However, all of the evidence that came in, the medical testimony, Judith DeGue, the DCFS investigator, all of the 11510 evidence that came in indicated that the minor only started experiencing the symptoms of hissing and a muffled sound after the slap occurred. What about the rest of the DVD? The trial court borrowed and then the state attempted during the trial to ask questions pertaining to other events and the trial court sustained those objections. Is that fair? You know, the state mentioned that the entire DVD was played in the court. The court did say she would confine her consideration to only those statements that were allowed during the 11510 hearing. However, both the state and defense counsel went on to ask questions of Detective Frazier, who was talking about the DVD, who actually made the DVD, was to ask questions about, you know, was this a new type of discipline? And so the state would submit that if there was error in barring those statements, there was actually testimony from Detective Frazier about this was a new thing that hadn't occurred before. So all of the concerns that the defendant is raising actually were in the record and considered by the court. So in the state's position, that would be harmless error if this court finds that the state or the court improperly did not consider the entire DVD. But as I said, the entire DVD was played and both parties asked questions of Detective Frazier about her questions to WT, which were reflected on that DVD. So no further questions. The state's position is that, as I said, the evidence was sufficient. Any rational trier of fact could have found the elements of this charge beyond a reasonable doubt and found that the defendant's discipline of this minor was not reasonable. And for those reasons, we would ask one final question for you. I'm sorry. Let's assume for the sake of argument that WT did have some type of an ear infection prior to this event. Does it matter whether or not there was an infection if the impact caused the infection to make the eardrum burst? I alluded my brief and I think that the defendant in his reply brief responds to that, that no, the defendant would take the minor as he finds him. That the minor was more prone, perhaps, to have his ear burst doesn't mean that this was not proved. I'd also, I guess, maybe think of Dr. DeBartolo actually did admit, and this is another reason why the court limited its consideration of his testimony or found it to be warranted less weight. Dr. DeBartolo did admit that an adult male could, in fact, cause this type of injury. He did qualify that and say he would have other types of injury associated with it. That's not inconsistent with all the evidence. Officer Coletti testified that she did observe and photograph the minor's face and that there was a bruise behind his ear and redness on his face. But in sum, the people would ask that the court affirm the defendant's conviction. Thank you. Thank you. Mr. Clark. I guess I would, Your Honor, I would take my rebuttal in reverse order. I would submit that under the fatality of the circumstances that it was, in fact, more than harmless error under the terms outlined in our brief for the court to admit an indivisible document, exhibit number nine. And to not consider other relevant evidence, which is contained on the DVD, that in combination, in my opinion, Judge, is more than harmless error. With respect to the other allegations of counsel and the nature of the telephone conversation, we would simply stand on that brief as to the court's analysis of that. I think the case law is clear and the court is certainly in a position to make that determination. With respect to the specific factors required by the DeKalb Court and the Green Court to determine the reasonableness of parental discipline, counsel correctly discusses for the court there has to be wanton recklessness. There has to be malice. There has to be psychological, according to the Green Court, there has to be a psychological harm or emotional distress, fear, some type of risk of future more severe discipline. Counsel brings up that this was a one-time occurrence. Well, he was 12 years old, no longer in a position, as I mentioned earlier, to be of spanking age for this type of purpose. What was his response to the discipline? He cleaned his room. What did he do thereafter? He did his normal events for that evening. He went to his mother's for a visitation. He played video games with his friend. He went to a haunted house his mother took him to. No pain medication was required at any time. The only time his evening was other than ordinary was when the mother decided to take him to the ER after consultation with a friend of hers who testified in the court. But up until that point in time, the minor engaged in all of his normal activities that evening. I would suggest to you that that is not emotional distress. What choice would he have had under the circumstances? Well, wait a minute. I'm sorry. I don't mean that. Well, you said he engaged in his normal activities. Right. Given the fact that he had experienced physical discipline from his father, I'm not sure. I understand. Given the control issue and everything else, what else one could have expected? I understand. He was not of an age in which he could have determined any other course. Right. I understand that. Right. I mean, he did run outside with no shoes on. No. And left the house, you know, very quickly. My point in raising that for your honors was that apparently no one testified to that he indicated to anyone that he was not able to participate or willing or wanting to participate in it because of any discomfort he was feeling. That's my point in raising that for your honors. What about your client's apology? Judge, I think any time, quite frankly, I mean, I'm a parent. You're a parent. Again, we can rely on our own parenting. When we see that our particular child may be upset that some discipline occurred or the other, you want to console that child. I don't think it's anything more than that. Again, parenting doesn't occur in a sterile environment. It occurs in which he's also at this point in time getting his son prepared for a visitation with his mother, wants to call him, wants to make sure that he's on his way, and he does have a good evening with his mother. That's his purpose. Was the trial court free to consider the defendant's apology in deciding whether or not he had stepped across the bounds of reasonable corporal punishment? Judge, the trial court is always free to interpret the evidence in the way in which the trial court sees fit. But I would suggest to your honors that to read more into that other than simply consoling a child and preparing him for visitation was an incorrect assumption on the trial court's part. The trial court seemed to suggest that that corroborated the 11510 statements as well as T.T.'s testimony. And I again ask the court to look at the actual 11510 statements and actually look at the trial testimony and the testimony of the individuals who came to testify allegedly or purportedly in support of those 11510 statements. Let's look at the entire totality of the circumstances of the event that occurred. Again, there's no obvious sign of trauma. There's no disruption or interruption of his normal activities for the evening. Even the ER doctor later says there's no obvious signs of trauma. The pictures that the officer takes at the police station show no obvious signs of trauma. The physical impossibility of the way in which the state has alleged this to occur is quite simple. I mean, I have a handkerchief. If I hold this handkerchief straight up and I blow on this handkerchief, you can see which way the wedge shape has to form. We're not talking about necessarily the situation in which it's complicated. The wedge-shaped defect could only have occurred because of the air being forced in a particular direction. It did not come from the outward inward. It came the opposite. It came from the way the doctor demarcable testified. Your argument rests on the fact that coincidentally when these events took place in the basement that T.T. testified to, that that is the exact moment at which his eardrum ruptured for another reason. Judge, I'm glad you brought that up. The reason is this. When you talk to or when they asked the follow-up doctors, for example. I'm sorry. When the state asked the follow-up doctors, Dr. Cameron and I can't remember her last name. Hewlett. Dr. Hewlett was the other who also was a lawyer in Belgium. They could not state to a reasonable degree of medical certainty the causation or mechanism of the injury that they were supposedly following up with. They could not say to a reasonable degree of medical certainty when that injury may or may not have occurred. Dr. Duarte himself could not testify to as to when the mechanism occurred. And that was the ER doctor that very same evening. It did not and could not and did not happen as of the moment of the impact, Your Honor. And there's no credible medical testimony in Crawford by the state in the light most favorable to the state that would give you a time frame that would tell you when this occurred. Dr. Duarte couldn't testify to it. Dr. Cameron and Dr. Hewlett could not testify to it. Dr. Duarte did testify that at 11 p.m., give or take, it had to have occurred within the last 24 hours. But that was later on that same evening, so it does not have to be even on the same physical day. Even under Dr. Duarte's testimony. Do you agree with the statements the child made to the personnel at the hospital come in as substantive evidence? Judge, no, I do not. The reason is that I think it lacks foundation. The reason is that we're not even certain if you read the trial testimony that it was the minor who made those statements or that was whom the history was taken from. Dr. Duarte testified that a history was taken. He testified it was his ordinary routine procedure to have his triage nurse take the history. He testified that he had no reason to believe his ordinary procedures were not followed that evening. He could not state who the triage nurse spoke to, whether it was the mother or whether it was to the minor. So I would say that those are not substantive, Judge. They should not have been admitted as substantive. There should not be a specific objection to that. That's not in the briefs. Judge, I believe there was, but I would rely on the record for that. It's not in the briefs. I would rely on the record for that trial. Thank you. Thank you very much. Thank you. Thank you, Counsel. Thank you very much, Counsel. At this time, the court will take the matter under advisement and render a decision in due course. We stand in recess until the next case. Thank you.